McClair, Plaintiff in Error, v. Wilson et al., Defendants in Error.

1. Duress—Threats.

A person will not be relieved from liability on a contract on the ground that the same was obtained from him by threats, unless the threats have caused actual fear of some grievous wrong; as of death, great bodily injury, or unlawful imprisonment, or unless the threats were of such character and importance as to destroy the threatened party's freedom of will.

2. Note, obtained by Threat.

It is not unlawful for a creditor to demand and secure from his debtor a promissory note for a *bona fide* debt, under threat of suit if such note be not given; and a debtor cannot avoid the payment of a note merely on the ground that the same was obtained by means of such a threat.

*Error to the County Court of Arapahoe County.*

Action upon a promissory note by Wilson Bros., payees, against Samuel McClair, maker.

The answer admitted the due execution and nonpayment of the note. Defendant pleaded that the note was executed under duress; he also pleaded a counterclaim. Plaintiffs demurred to the answer; the demurrer was sustained; and, defendant electing to abide by his answer, judgment was rendered in favor of plaintiffs for the amount of the note. Defendant seeks a reversal of the judgment by writ of error from this court.

. Mr. A. B. McKinley, for plaintiff in error.

Mr. Charles H. Burton, for defendants in error.

Mr. Justice Elliott delivered the opinion of the court.

The action of the court in sustaining the demurrer to the answer is the only matter assigned for error.

The answer consists of two defenses.   In form, the first is a plea of duress; the second is called a counterclaim; but as the gist of the two defenses is the same, they may be considered together.

Does the answer state facts sufficient to show that the execution of the note was obtained by duress?   Was the note given as a voluntary act on the part of the defendant, or, was it given under compulsion occasioned by such threats as in law should be held to have destroyed defendant's freedom of will? A brief consideration of the material averments of the answer will suffice to determine these questions.

It appears that at and before the execution of the note in controversy, the defendant Samuel McClair and one Robert M. Ware were partners, doing business under the firm name of " Ware & McClair," as merchants in the city of Chicago. They were indebted to the plaintiffs, Wilson Bros., in the sum of about three thousand dollars for goods sold and delivered to them by said plaintiffs. . It is alleged that plaintiffs had promised to give credit to said Ware & McClair, and that the latter firm had purchased the goods believing they should have all the credit they desired.

It is further alleged that on February 4, 1886, at about 6 o'clock P. M., without previous warning, plaintiffs demanded and insisted that McClair should execute and deliver a note to plaintiffs for the sum of $646.54, payable two years after date, with interest at six per cent per annum, and that he should retire from his said partnership; and that plaintiffs threatened that unless he acceded to their demands by 9 o'clock the next morning, they would at once attach the

stock and assets of his firm for said debt of three thousand dollars.

It is further alleged that McClair, knowing that if plaintiffs carried out their threat his business would be ruined, that the stock and assets of his firm would not, after paying the expense of litigation, pay and satisfy plaintiffs' demand, that a large judgment would be left against him which he was then unable to satisfy; also, that defendant, fearing, if suit should be brought, his business reputation and standing would be injured, and that he would suffer great pecuniary loss and mental anxiety, did, on the following day, execute and deliver to plaintiff the note as demanded, and did retire from said firm; that defendant was in great mental distress and was worried and harassed at the time by reason of said demands of plaintiffs, and so executed said note.

Conceding the truth of the matters thus alleged, they are not sufficient in law to warrant the court in holding that the note was obtained by compulsion. The facts and circumstances, thus alleged, do not, in contemplation of law, amount to duress. The general rule on this subject is stated by a standard author as follows:

"Duress by threats does not exist wherever a party has entered into a contract under the influence of a threat, but only where such a threat excites a fear of some grievous wrong; as of death, or great bodily injury, or unlawful imprisonment. * * * But where the threat, whether of mischief to the person or the property, or to the good name, was of sufficient importance to destroy the threatened party's freedom, the law would not enforce any contract which he might be induced by such means to make." 1 Parsons on Contracts, pp. 393–5; 1 Chitty on Contracts, pp. 269–73; *Silliman v. United States*, 101 U. S. 465.

The first part of the foregoing quotation is a fair statement of the more rigid rule,—the latter, of the more lenient rule,—in respect to duress. Defendant's answer is insufficient under either rule.

In most, if not all, of the reported cases, where a party

has been relieved from liability on a contract *on the ground that the same was obtained from him by duress, or threats amounting to duress*, it will be found that the duress or threats were, not only unlawful, but that the contract thus obtained was essentially unjust towards the party seeking relief from it. *Adams v. Schiffer*, 11 Colo. 30–33; *White v. Heylman*, 34 Pa. St. 142; *Collins v. Westbury*, 2 Bay (S. Carolina), 209; *Crawford v. Cato*, 22 Ga. 594; *Vyne v. Glenn*, 41 Mich. 112; *Scholey v. Mumford*, 60 N. Y. 498.

In this case the answer avers that defendant and his partner were threatened with suit by plaintiffs unless defendant should execute the note. But it also appears that their debt to plaintiffs was much greater than the amount of the note demanded; hence, it was lawful for plaintiffs to sue if they could not otherwise obtain a satisfactory settlement. The property of defendant's firm was also threatened with attachment. Presumably it was liable to attachment,—at least, the answer does not negative such liability. It is alleged that plaintiffs promised to give credit to defendant's firm. The answer shows that plaintiffs did give such credit. The answer does not, however, show the extent of the credit promised, either as to time or amount; hence, no legal or reasonable ground appears for defendant's belief that plaintiffs would give all the credit his firm desired.

The answer avers that defendant feared that his business would be ruined, his property sacrificed, and his business reputation and standing injured if he should be sued by plaintiffs, and that thus he would be subjected to great pecuniary loss and mental anxiety.

All these things are but the common ordinary incidents resulting from over-indebtedness on the part of those engaged in mercantile and other business pursuits. It is not unlawful for a creditor to demand and secure from its debtor a promissory note for a *bona fide* debt, under threat of suit if such note be not given; and a debtor cannot avoid the payment of a note merely on the ground that the same was obtained by means of such a threat. *Jackson et ux. v. Allen*, 4

Colo. 263; *Prichard v. Sharp*, 51 Mich. 432; *Peckham v. Henderson*, 76 Ind. 47.

The sustaining of the demurrer to the answer was not error. The judgment of the county court is affirmed.

*Affirmed.*