**In re Charles J. CHURCHFIELD and Jamie L. Churchfield, Debtors.**

No. 98–10356–B–7.

United States Bankruptcy Court, E.D. California, Fresno Division.

May 3, 2002.

John D. Carlson, Bakersfield, CA, for debtor.

D. Max Gardner, Bakersfield, CA, for trustee.

## MEMORANDUM OPINION RE MOTION TO COMPROMISE CLAIMS

W. RICHARD LEE, Bankruptcy Judge.

In this case the court addresses the question of whether the Perishable Agricultural Commodities Act of 1930, as amended in 1984 (7 U.S.C. § 499a, et seq.) ("PACA") and specifically the statutory trust established by 7 U.S.C. § 499e(c) ("PACA Trust") extend to monies which the chapter 7 trustee has recovered through his powers to avoid and recover preferential transfers under 11 U.S.C. §§ 547 & 550. The issue arises in the context of a chapter 7 trustee's motion to compromise a controversy involving the claims of two PACA Trust beneficiaries. The continued hearing on the trustee's Motion to Compromise Claims (the "Motion to Compromise") was heard before the

undersigned and taken under submission on March 7, 2002. D. Max Gardner, Esq. appeared for the chapter 7 trustee, Randell Parker ("Trustee"). There was no opposition and no other appearances were made. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) & (O). This Memorandum Opinion contains the court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052(a). In summary, the Trustee's Motion to Compromise is denied because the Trustee has not made a *prima facia* showing of a real and substantial factual or legal controversy.

### Background.

This bankruptcy was filed under chapter 7 on January 14, 1998. Prior to filing bankruptcy, Charles and Jamie Churchfield (the "Debtors") owned and operated Sparrow Industries Independent Transportation Services, a sole proprietorship, which involved the purchase of perishable agricultural commodities such that the Debtors were subject to the PACA regulations and licensing requirements.[1]

In October 1999, the Trustee filed four adversary proceedings to recover preferential transfers made in September and October 1997, from third parties that had provided goods and services to the Debtor (the "Preference Defendants").[2] Soon after the complaints were served, three of those adversary proceedings resulted in settlements which were approved by this court as compromises of controversies, the proceeds of which were paid to the Trustee.[3] The Trustee has collected a total of $16,000 from the adversary proceedings (the "Preference Recovery") plus $440 from a workers' compensation refund. With accrued interest, the assets of the estate at the time of the Motion to Compromise totaled $16,639.

After the adversary proceedings were settled, two creditors, Lamb–Weston, Inc. and J.R. Simplot Company (the "PACA Claimants") asserted rights against the Preference Recovery as beneficiaries of a PACA Trust.[4] Based on the Trustee's review of the PACA Claimants' demands,

---

1. The court makes no findings with regard to the prepetition application of PACA law. That issue was not disputed by the Trustee. It was not briefed in relation to the Motion to Compromise and it was conceded as the basis for the underlying controversy. The Trustee represents that he has reviewed the PACA claims, the supporting documents, the types of commodities sold and the PACA Trust perfection issues. For purposes of this ruling, the court accepts the Trustee's conclusion that the Debtors were subject to PACA regulations, that some of the Debtors' prepetition assets may at one time have been subject to the PACA Trust, and that the PACA Claimants are eligible PACA Trust beneficiaries.

2. 1. Parker v. Atwater Canning Co., Inc., adversary proceeding no. 99–1377.
 2. Parker v. Select Ingredients, adversary proceeding no. 99–1378.
 3. Parker v. Oak Valley Farms, Inc., adversary proceeding no. 99–1379.
 4. Parker v. Victor Packing Co., adversary proceeding no. 99–1384.

3. Atwater Canning—$5,000; Victor Packing—$10,000; and Oak Valley Farms—$1,000. The adversary proceeding against Select Ingredients resulted in the entry of a $33,000 default judgment which the Trustee has so far been unable to collect.

4. The record does not reveal when or how the PACA Claimants asserted their Trust claims. The PACA Claimants did not appear or file anything in support of the Motion to Compromise. The PACA Claimants did not file an adversary proceeding to protect or enforce their trust rights. PACA Claimant Lamb–Weston filed both "secured" and "priority" claims, each for $15,233.73, which appear to be duplicate claims. J.R. Simplot filed an "unsecured" claim for $31,462.94 with the notation that it was unsecured "To extent not satisfied through recovery of PACA trust assets." At the hearing, the Trustee represented that the PACA Claimants did not assert their Trust claims until after the preference actions were settled. It is not clear whether the PACA Claimants also asserted PACA Trust

the Trustee conceded that the PACA Trust extended to the Preference Recovery,[5] but the Trustee asserted an offset for the "hard" cost of prosecuting the preference actions and collecting the Preference Recovery proceeds. The Trustee relied upon *Bank of Los Angeles v. Official PACA Creditors' Committee (In re Southland + Keystone)*, 132 B.R. 632 (9th Cir. BAP 1991) for the proposition that PACA Trust assets (prepetition accounts receivable) collected by a third party and disgorged to the PACA Trust beneficiaries, may be subject to "offset" to compensate the disgorging party for its "hard" collection costs "such as outside attorney's fees and expenses that were necessary to the collection effort." *Southland + Keystone* at 643.

In an effort to preserve some funds to cover the estate's administrative expenses, the Trustee negotiated a compromise of the "offset" issue with the PACA Claimants whereby the sum of $13,810.37 (83% of the funds in the estate) would be surrendered to the PACA Claimants. The Trustee would retain $2,828.63 (17% of the funds in the estate), including the insurance refund, an amount insufficient to pay the estate's administrative expenses. The Trustee elected to compromise the "offset" dispute with the PACA Claimants based on his analysis of the cases which hold that once a PACA Trust has been established, it is the Trustee who has the burden to prove which assets, if any, are *not* subject to the PACA Trust. *In re Fresh Approach, Inc.*, 51 B.R. 412, 422 (Bankr. N.D.Tex.1985). The Trustee acknowledged that he could not meet the burden

of proof and show that the monies transferred to the Preference Defendants in 1997 were not traceable to a PACA Trust. Based thereon, the Trustee also concluded that the Preference Recovery was traceable to the PACA Trust and therefore was not an asset of the estate.

### The Trustee Must Establish That There is a Real and Substantial Controversy to be Comprised Regarding Property of the Estate.

The Motion to Compromise involves a dispute over the Trustee's right to offset administrative expenses against PACA Trust assets. However, at the root of the dispute lies a more fundamental question—whether the funds recovered through the Trustee's avoiding powers are subject to the PACA Trust or whether they are property of the bankruptcy estate. Even though there may be a real controversy over the Trustee's right of offset, that issue is not reached unless the Preference Recovery is actually subject to a PACA Trust, or unless the court can also find that there is a real and substantial controversy on the PACA Trust issue.

 Federal Rule of Bankruptcy Procedure 9019 gives the Trustee the express authority to compromise a controversy or settle a dispute affecting the administration of the estate, subject to court approval. While the opinion of the Trustee is entitled to great weight, the bankruptcy court has a duty to make an informed, independent judgment as to the reasonableness of the proposed compromise. *Protective Committee for Independent*

---

rights against the workers' compensation refund.

**5.** The Trustee did not contest or negotiate a compromise of the PACA Claimants' underlying demands against the Preference Recovery. In footnote 1 to the Trustee's Supplemental Points and Authorities, the Trustee stated:

"The Trustee considered litigating the position that funds coming back into the estate lost their PACA status. We could not find authority for this proposition and there was not enough money at stake to make litigation worthwhile."

*Stockholders of TMT Trailer Ferry, Inc. v. Anderson (TMT Trailer Ferry),* 390 U.S. 414, 424, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968). The burden of persuasion is on the Trustee. *In re A & C Properties,* 784 F.2d 1377, 1381 (9th Cir.1986).

▮▮▮ While the court has no reason to question the good faith of the Trustee, there must be more than mere good faith negotiation of a settlement.[6] The factors which guide the courts of this Circuit in approving a compromise of controversy are set forth in *A & C Properties*—the court must examine the nature of the dispute and find that the proposed compromise is fair and equitable. In determining the fairness, reasonableness and adequacy of a proposed settlement agreement, the court must consider: (a) the probability of success in the litigation; (b) the difficulties, if any, in the matter of collection; (c) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors and a proper deference to their reasonable views. *A & C Properties* at 1381.

▮▮▮ Implicit in the *A & C Properties* test is the foundational requirement that the Trustee must make a *prima facia* showing of a real and substantial controversy over the facts and/or the application of law. Even in the absence of an objection to the proposed compromise, the court must make an independent analysis of the relevant factors. The court must identify the disputed issues and determine both the burden upon the estate and the risks associated with resolution of those issues. The court is not required to resolve the disputed issues, but the court must be able to identify them so that the reasonableness of the settlement may be evaluated. "The bankruptcy court must carefully weigh the value of the settled claim against the value to the estate by the settlement." *In re Hermitage Inn, Inc.,* 66 B.R. 71, 72 (Bankr.D.Colo.1986). The court must be able to "compare the terms of the compromise with the likely rewards of litigation." *TMT Trailer Ferry* at 424–25, 88 S.Ct. 1157.

### The Preference Recovery Does Not Fall Within the Statutory Definition of a PACA Trust.

The Trustee's dispute with the PACA Claimants turns on the question of whether the Preference Recovery is property of the bankruptcy estate or of the PACA Trust. The bankruptcy estate comes into existence upon "commencement of a case" (11 U.S.C. § 541(a)). Property of the estate is defined in 11 U.S.C. § 541(a) in pertinent part as follows:

Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

(2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case....

---

6. Some of the Trustee's motivation for the proposed compromise appears to be based on economic factors. The Trustee explained the dilemma in his Supplemental Points and Authorities, "... the Trustee determined that he would have had to file a complaint to determine nature, extent, validity of liens and interests against the two PACA claimants. He would have had to prove that the accounts receivable paid out to the preference claimants were not subject to the PACA trust. Since that could not be established, litigation could have been commenced simply to attempt to recover the full value of all professional fees. Since there was not [*sic*] conclusive authority that such action would be successful, the proposed compromise was struck."

*(3) Any interest in property that the trustee recovers under section ... 550 ... of this title.* (Emphasis added.)

11 U.S.C. § 550 compliments the Trustee's avoiding powers under other provisions of the Bankruptcy Code, including the power to avoid preferential transfers under section 547. The avoiding powers provided by section 547 alone do not result in a recovery for the estate. The Trustee's power to recover such transfers is found in section 550(a) which provides, "... to the extent that a transfer is avoided under section ... 547 ... of this title, the trustee may recover, *for the benefit of the estate,* the property transferred, or, if the court so orders, *the value of such property ....*" (Emphasis supplied.)

Here, the Trustee commenced four adversary proceedings pursuant to his avoiding powers under section 547 to avoid preferential payments made (presumably) from the Debtors' checking account to the Preference Defendants. Through the various settlements and pursuant to his recovery powers under section 550, the Trustee recovered the funds which now constitute the Preference Recovery *for the benefit of the estate.* The Preference Recoveries are clearly "property of the estate" pursuant to section 541(a)(3).

On the other hand, PACA imposes a statutory trust on certain assets of the Debtors pursuant to 7 U.S.C. § 499e(c)(2) which reads in pertinent part:

*Perishable agricultural commodities* received by a commission merchant, dealer, or broker in all transactions, and *all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products,* shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transactions .... (Emphasis added.)

■ The PACA Trust is a "floating" trust, *i.e.,* it applies to all of the Debtors' produce related inventory and proceeds thereof, regardless of which produce supplier was the source of the inventory. No specific tracing of inventory or proceeds is required; and it is the Debtor, or the Trustee opposing the PACA Trust, who must determine which assets, if any, are not subject to the Trust. *Fresh Approach* at 422.

■ Reading 7 U.S.C. § 499e(c)(2) together with 11 U.S.C. §§ 550 and 541(a)(3), the court concludes that the Preference Recovery does not come within the scope of the PACA Trust, without regard to the Trustee's inability to trace the initial preference payments to non-trust assets. The Preference Recovery is not a perishable agricultural commodity, it is not an inventory of food or other product derived from an agricultural commodity, nor is it a receivable or proceed from the sale of such commodities or products. Assuming, *arguendo,* that the avoided preferential transfers were initially funded with "proceeds from the sale of perishable agricultural commodities" it is implausible to assume that the funds paid to settle the adversary proceedings over two years later were traceable to the same proceeds. By settling the adversary proceedings, the Trustee did not recover PACA Trust assets; he recovered a negotiated amount based upon the estimated "value" of the avoidable transfers to the estate. (Section 550(a)). The PACA Trust did not extend to the general assets of the Preference Defendants, including the accounts from which the three Preference Recoveries were paid to the Trustee. As such, the Preference Recovery is not property of a PACA Trust pursuant to 7 U.S.C. § 499e(c)(2).

### The Authority Which Excludes PACA Trust Assets From the Bankruptcy Estate is Not Applicable to the Preference Recovery.

When the prepetition assets of a debtor are imposed with a PACA Trust, then 11 U.S.C. § 541(d) applies to exclude those assets from the bankruptcy estate:

Property in which the debtor holds, *as of the commencement of the case*, only legal title and not an equitable interest ... *becomes property of the estate* under *subsection (a)(1) or (2)* of this section only to the extent of the debtor's legal title to such property, but not to the extent of an equitable interest in such property that the debtor does not hold. (Emphasis added.)

■ Simply put, section 541(d) excludes from the bankruptcy estate the equitable interest of any property described in subsections (a)(1) and (a)(2) which a debtor holds in trust for a third party. Interpreting section 541(d), the courts have universally recognized that any property held by a debtor in a statutory PACA Trust is excluded from the bankruptcy estate. *C & E Enterprises, Inc. v. Milton Poulos, Inc. (In re Milton Poulos, Inc.)*, 107 B.R. 715, 718 (9th Cir. BAP 1989), *aff'd in part and rev'd in part on other grounds*, 947 F.2d 1351 (9th Cir.1991), citing *In re Fresh Approach, Inc.*, 51 B.R. 412, 419 (Bankr.N.D.Tex.1985). The proposition that PACA Trust assets are not property of the bankruptcy estate was described by the court in *Fresh Approach* as "so widely accepted as to be beyond dispute." 51 B.R. at 419.

■ Again, the court may assume, *arguendo*, that the funds which the Debtors used to pay the Preference Defendants were "proceeds of perishable agricultural commodities" and therefore subject to a PACA Trust at the time they were paid. Based upon the principals set forth in *Fresh Approach* and its progency, the Trustee conceded that the Preference Recovery, resulting from the prepetition transfer of PACA Trust funds would also be excluded from the bankruptcy estate under § 541(d). However, a plain reading of section 541 suggests that the general proposition regarding the exclusion of PACA Trust assets would not apply to the Preference Recovery.

*Fresh Approach* relies on the qualifying language in 11 U.S.C. § 541(d). However, section 541(d) only qualifies those assets defined in section 541, subsections (a)(1) & (a)(2). The Preference Recovery is deemed to be property of the estate under section 541(a)(3), not subsections (a)(1) or (a)(2). Those subsections specifically relate to "interests of the debtor in property as of the commencement of the case ...." The Preference Recoveries were neither "interests of the debtor" nor did they exist "as of the commencement of the case." The right to avoid a preferential transfer uniquely vests in the Trustee under section 547 and does not come into existence until the bankruptcy case is commenced. Similarly, the right to recover the value of an avoided transfer under section 550 uniquely vests in the Trustee and does not come into existence until the bankruptcy case is commenced. Further, the Preference Recoveries themselves did not come into existence until the Trustee settled the adversary proceedings with the Preference Defendants, over a year *after* the case commenced. The Preference Recovery is therefore *not* excluded from the bankruptcy estate under section 541(d).[7]

---

7. Recognizing that PACA Trust funds are not "an interest of the debtor in property" by application of section 541(d), some courts have held that the prepetition transfer of PACA Trust assets is not avoidable as a preference under Bankruptcy Code section 547(b).

***The Authority Which Supports the Trustee's Right of Offset for Collection Costs is Not Applicable to the Preference Recovery.***

The Trustee relies on *Southland + Keystone* as the basis for his position than an "offset" is necessary and appropriate to preserve some assets for the estate. However, *Southland + Keystone* is factually distinguishable from this case. In *Southland + Keystone*, the appellant, Bank of Los Angeles, seized and liquidated some of the debtor's *prepetition accounts receivable* pursuant to its loan and security documents. A committee of PACA claimants filed a complaint against the debtor and the Bank for a declaration that the accounts receivable were PACA Trust assets and for disgorgement of those monies. In response, the Bank asserted an "offset" for its collection costs. The debtor's prepetition accounts receivable fell within both the statutory definition of a PACA Trust under 7 U.S.C. § 499e(c)(2) and the "trust" exclusion under 11 U.S.C. § 541(d). However, the Preference Recovery at issue in the present case does not meet either of these criteria. Since the Trustee did not recover the Debtors' prepetition accounts receivable, or any other asset within the definition of a PACA Trust, the holding in *Southland + Keystone* is not applicable to establish that there is a real and substantial controversy between the Trustee and the PACA Claimants, or that the proposed compromise of controversy over the "offset" issue is fair and equitable.

***Conclusion: The Court Cannot Find That There is a Real and Substantial Controversy to Be Compromised.***

Based on the foregoing, the Trustee has erred in his analysis of the interplay between PACA law and the Bankruptcy Code. Upon consideration of the applicable authority, the court concludes that the Preference Recovery is not subject to a PACA Trust. Accordingly, the Preference Recovery is property of the estate, available for distribution as set forth in 11 U.S.C. § 726. The facts which would limit the estate's interest in the Preference Recovery solely to "hard" collection costs are not present here. Therefore, the court cannot find that there is a real and substantial factual or legal dispute sufficient to warrant the surrender of 83% of the estate to the two PACA Claimants. Weighing the cost of the proposed compromise against the value to the estate, the court cannot conclude that the compromise is reasonable or in the best interest of the estate. Therefore, the court is compelled to deny the Trustee's Motion to Compromise. A separate order will issue.

---

*Fresh Approach* at 424. This issue, if applicable, was a defense which the Preference Defendants could have, but chose not to, raise when they elected to settle the preference recovery adversary proceedings. Therefore, that defense is not grounds for this court to hold that funds recovered by the Trustee through settlement of those adversary proceedings should also be excluded from the bankruptcy estate.