**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**September 6, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CHRISTIE MCWILLIAMS,

     Plaintiff-Appellant,

v.

JEFFERSON COUNTY,

     Defendant-Appellee.

No. 05-1081

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 03-B-2201 (CBS))**

---

Lee T. Judd of Andrew T. Brake, P.C., Englewood, Colorado, for Appellant.

Patricia W. Gilbert, Assistant County Attorney (Frank J. Hutfless, Jefferson County Attorney, with her on the brief), Jefferson County Attorney's Office, Golden, Colorado, for Appellee.

---

Before **KELLY**, **McKAY**, and **O'BRIEN,** Circuit Judges.

---

**McKAY**, Circuit Judge.

---

Plaintiff, formerly a computer-support specialist with Jefferson County, suffers from intermittent depressive episodes which make it difficult for her to sleep, "deal with people," and "cope with work situations." Order, 3 (D. Colo.

Jan. 13, 2005) (internal quotations omitted). She claims that she let her supervisors know about her depression and that she asked for their help in the form of encouragement–"just pat me on the back and tell me that it'll be better in a few days." *Id*. at 4 (internal quotations omitted).

Plaintiff was employed by Jefferson County from September 1995 to October 16, 2002. During this seven-year period, she received several negative performance evaluations concerning her interactions with others. She was criticized for "rude and inappropriate" behavior and for not being able "to keep her cool." *Id*. at 2 (internal quotations omitted). Most recently, in 2002, Plaintiff's supervisor admonished her both verbally and in writing for her disrespectful conduct and inappropriate behavior. Evidently, Plaintiff had made personal charges on a County credit card (which she eventually repaid), had neglected to notify her supervisors in advance of numerous absences, and had been inconsiderate to co-workers on several occasions.

Plaintiff received an unfavorable evaluation in 2002, although she disputes the negative characterization of her job performance. Plaintiff "attributes her personal shortcomings to her depression, which she considers a disability." *Id*. She has taken medication to combat her depression since 1992 and attended weekly counseling sessions from 1992 to 1994 (prior to her employment with Jefferson County).

During her years with the County, Plaintiff was granted several FMLA and

other leaves of absence. In 1998, she took a family leave of absence. In 1999, she was granted a seven-week medical leave due to a car accident. She applied for and was granted additional leave from the County sick leave bank in 1999. In 2000, she took a five-week leave of absence following surgery. In 2002, she took a six-week leave following her father's death. Plaintiff also took off work without advance notice on three occasions in 2002. The only instance in which the County denied Plaintiff leave followed her request for accommodation to settle her deceased father's estate. Plaintiff was informed that the County's employment policy does not grant sick leave for that purpose.

On October 16, 2002, the director of the County computer department informed Plaintiff of his intention to terminate her employment. During this meeting, the County maintains that Plaintiff was given two options: (1) to receive a notice of intent to dismiss (and be terminated) or (2) to resign by signing a release of all claims against the County and receive a two-month severance package. Appellee Br. at 4-5. Plaintiff disputes this characterization of her options; she claims that she was

> informed she was terminated, either with money or without, and she had to make an immediate decision as to whether she wanted money or not, despite her requests that she be allowed to consult her husband, have time to consider the options and to see the paperwork for both options.

Appellant Br. at 20.

Plaintiff brought this lawsuit alleging claims of gender discrimination

-3-

under 42 U.S.C. § 2000e *et seq.*, disability discrimination under 42 U.S.C. §§ 12101-12213, breach of contract, promissory estoppel, and violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*. The district court granted summary judgment to the County on all claims. Plaintiff appeals that judgment.

On appeal, we review de novo the propriety of a grant of summary judgment. *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). Summary judgment is only warranted when there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In determining whether any genuine issue as to any material fact exists, evidence is to be liberally construed in favor of the party opposing the motion for summary judgment. *Florom v. Elliott Mfg.*, 867 F.2d 570, 574 (10th Cir. 1989).

As to Plaintiff's claim of sexual discrimination, we agree with the district court's grant of summary judgment to Defendant. The County has submitted legitimate, nondiscriminatory reasons for Plaintiff's termination–her inappropriate behavior with co-workers and her numerous unexcused absences. It is Plaintiff's burden to articulate how the County's proffered reasons are unworthy of belief. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-49 (2000); *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995). Plaintiff does not dispute the veracity of these purported reasons; rather, she defends that they were

the result of her depression. While Plaintiff's explanation may be the sad truth, it does not satisfy her burden of showing that the County's stated reasons for her termination were pretextual.

Plaintiff has also failed to produce evidence to establish that she was a qualified individual with a disability under the Americans with Disabilities Act (ADA). To withstand summary judgment on her ADA claim, Plaintiff "must show that (1) she is disabled within the meaning of the ADA, (2) she is able to perform her essential job functions with or without reasonable accommodation, and (3) [the County] discriminated against her in [its] employment decisions because of her alleged disability." *Croy v. Cobe Laboratories, Inc.*, 345 F.3d 1199, 1203-04 (10th Cir. 2003). A disability, as defined by the ADA, is "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." *Id*. at 1204 (citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 478 (1999)). Plaintiff has not produced evidence that she was substantially impaired or significantly restricted in any major life activity. Although she attests that her intermittent depressive episodes caused her difficulty in sleeping and getting along with her co-workers, she has not shown how these limitations prevented her from performing her job "or that she is unable to perform any of the life activities completely." *Croy*, 345 F.3d at 1204 (finding plaintiff suffering from multiple sclerosis not disabled under meaning of

ADA). Consequently, we agree with the district court's grant of summary judgment to Defendant on this claim.

We also determine that Plaintiff's claim for retaliation under the FMLA is without merit. In order to make a prima facie case of reprisal, "a plaintiff must show (1) protected employee action; (2) adverse action by an employer either after or contemporaneous with the employee's protected action; and (3) a causal connection between the employee's action and the employer's adverse action." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir. 1997). A causal connection between Plaintiff's exercise of FMLA leaves and her eventual termination is not supported by the record. The County's stated reason for Plaintiff's termination–her difficulty in getting along with coworkers–is documented beginning in 1997 (two years prior to Plaintiff's extended FMLA leaves). Plaintiff has failed to show that this reason was pretextual. *See, e.g.*, *Stewart v. Adolph Coors Co.*, 217 F.3d 1285, 1289 (10th Cir. 2000) (noting shift of burden in race discrimination case).

As to the state cause of action for breach of contract, Plaintiff claims that at the time of her dismissal the County breached its contract by failing to provide her with the appropriate procedural protections that were stated in its policies. There is a dispute in the record over whether the County followed its policies at the time Plaintiff signed her release. Specifically, Plaintiff claims that the County did not inform her that she would have the right to file a grievance if she chose

not to resign. The County maintains that Plaintiff was not only fully informed of her options but, more importantly, that her signing of a release negates any claims that Plaintiff may assert against the County. The district court chose not to address the release, but instead concluded that Plaintiff "failed to identify a single promise that . . . the County failed to perform," notwithstanding Plaintiff's claim of denial of procedural rights in her discharge. The district court declined to rule on the validity of the release, apparently concluding that no contractual right had been breached. The district court granted summary judgment to the County on Plaintiff's state law claim. It appears from the sparse record before us that the trial court did not apprehend Plaintiff's breach of contract claim. We interpret the gravamen of Plaintiff's state law claim to be duress in the execution of a release, relying on *Wiesen v. Short*, 604 P.2d 1191, 1192 (Colo. Ct. App. 1979).

We note that the pre-trial dismissal of all federal law claims, leaving only a state law claim, generally prevents a district court from reviewing the merits of the state law claim. *See* 28 U.S.C. § 1367(c)(3); *see also Thatcher Enters. v. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990) ("Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary."); *Jones v. Intermountain Power Project*, 794 F.2d 546, 549 (10th Cir. 1986) ("If a federal claim against a party is dismissed before trial, the pendent state law claims should often be dismissed as well."), *rev'd on other grounds, Yellow Freight System, Inc. v. Donnelly*, 494 U.S. 820 (1990).

In this case, given the spare attention devoted to the state law claim in the parties' briefs and the district court opinion, it is necessary for us to remand for further development to decide whether summary judgment is appropriate. We cannot say, at this juncture, that it would be an abuse of the district court's discretion to retain the state law claim, however we commend to the court the Supreme Court's cautions contained in *Carnegie-Mellon University v. Cohill*: "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine–judicial economy, convenience, fairness, and comity–will point toward declining to exercise jurisdiction over the remaining state-law claims." 484 U.S. 343, 350 n.7 (1988).

Consequently, we **AFFIRM** the district court's grant of summary judgment to Defendant on all claims except the state breach of contract claim, which we **REMAND** to the district court for either clarification of the state law claim or, in the alternative, dismissal.